IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, )<br>Plaintiff, )<br>v. )<br>KYND HEARTS HOME HEALTHCARE, LLC, *dba* KYND HEARTS HOME HEALTH CARE, *et al.*, )<br>Defendants. ) | Civil Action No. 2:20CV630 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 3). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Defendants' Motion to Dismiss.

**I. BACKGROUND**

Kynd Hearts Home Healthcare ("Kynd Hearts") is a limited liability company owned by Shawndell D. Harris and Alvonda Evans (collectively "Defendants"). (Compl. ¶¶ 1-4.) Kynd Hearts provides home healthcare services in its customers' homes by employing certified nursing assistants ("CNAs") and patient care assistants ("PCAs"). (*Id.* ¶ 2.) The CNAs and PCAs assist clients with activities of daily living such as cooking, dressing, changing, bedding, driving clients to doctor appointments, assisting with medications, bathing, changing diapers, grocery shopping,

1

and laundry. (*Id.*)  Eugene Scalia, Secretary of Labor of United States Department of Labor[1] ("Plaintiff") filed a Complaint on December 16, 2020, against Defendants seeking to enjoin Defendants from violating Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938 ("FLSA").  (*Id.* at 1.)  Plaintiff also seeks judgment against Defendants in the total amount of back wage compensation found by the Court to be due to any of the employees of Defendants pursuant to the Act and an equal amount due to the employees of Defendants in liquidated damages. (*Id.*)  The Complaint alleges that from at least December 22, 2016, through at least September 8, 2019 ("the relevant period"), Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the FLSA " by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer that those prescribed in Section 7 of the Act without compensating said employees for hours worked over forty (40) in a workweek at rates not less than one and one-half times their regular rates." (*Id.* ¶¶ 7-8.)  During the relevant period, Defendants failed to compensate certain non-exempt employees who worked over forty (40) hours in a workweek one and one-half times their regular rate. (*Id.* ¶ 9.)  Defendants paid those employees straight time for all hours worked over forty in a workweek in violation of Sections 7 and 15(a)(2) of the FLSA. (*Id.*)  Defendants developed a pay scheme to reduce employees' hourly rates the more hours they worked, and then paid the overtime rate based on the reduced hourly rate, not the regular hourly rate. (*Id.* ¶ 10.)  For instance, Defendants would reduce the pay rate of an employee who regularly earned $9 an hour to $7.92 an hour when the employee worked 55-67 hours a week. (*Id.*)  Consequently, instead of paying the employee $13.50 an hour for overtime, Defendant would pay $11.21 an hour for overtime. (*Id.*)  This practice resulted in Defendants paying employees overtime based on an artificial "regular" rate, which is a violation

---

[1] In March of 2021, Martin J. Walsh was confirmed as the Secretary of Labor.

of Section 7 and 15(a)(2). (*Id.*) The Complaint also alleges that Defendants violated Sections 11(c) and 15(a)(5) of the FLSA, by failing to make, keep, and preserve accurate records of employees' regular rate of pay and the total premium pay for all overtime hours worked in a workweek and compensation as prescribed by 29 C.F.R. § 516.2(a)(6) and (9). (*Id.* ¶ 11.)

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on December 16, 2020 (ECF No. 1). On March 12, 2021, Defendants filed a Motion to Dismiss and a Memorandum in Support (ECF Nos. 3, 4). On March 26, 2021, Plaintiff filed an Opposition to Defendants' Motion to Dismiss (ECF No. 7). On April 1, 2021, Defendants filed a Reply (ECF No. 8).

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). In considering a motion to dismiss, a plaintiff's well-

pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc.*, 7 F.3d at 1134 (citations omitted); *see also Martin*, 980 F.2d at 952.  Though accepted as true, the complaint must "state a claim to relief that is plausible on its face," meaning that the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## IV. ANALYSIS

Defendants argue that Plaintiff's Complaint fails to state a valid claim for relief for three separate and independent reasons. (Defs.' Mem. Supp. Mot. Dismiss at 2, ECF No. 4.)[2]  First, Defendants argue that Plaintiff's allegation that Defendants created an "artificial regular rate" by paying its employees a variable rate of pay is not a violation of the FLSA.  (*Id.* at 2-3.)  Second, Defendants argue that Plaintiff's "strained interpretation" of the FLSA renders the FLSA unconstitutionally vague with regard to defining "regular rate." (*Id.* at 3.)  Third, Defendants argue that even if there was a violation of the FLSA, the statute of limitations that applies to violations of the Act does not allow Plaintiff to extend the lookback as far back as December 22, 2016. (*Id.*)  The Court will examine each of these arguments in turn.

### A. Plaintiff Sufficiently Alleged a Violation of the FLSA

Congress enacted the FLSA "with the purposes of protecting employees and imposing minimum labor standards upon covered employers, including the payment of a specified minimum wage and overtime pay for covered employees." *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 363 (4th Cir. 2000).  To that end, "the FLSA requires that covered employers pay their employees 'at a rate not less than one and one-half times the regular rate at which [they are] employed' for any

---

[2] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

hours worked in excess of 40 hours per workweek." *U.S. Dep't of Labor v. Fire & Safety Investigation Consulting Servs.*, LLC, 915 F.3d 277, 280 (4th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). "The 'regular rate' includes 'all remuneration for employment paid to' the employee, apart from eight categories of payment not at issue here." *Id.* (quoting 29 U.S.C. § 207(e)). The overtime requirement in the FLSA "was intended to spread employment by placing financial pressure on the employer and to compensate employees for the burden of a workweek in excess of the hours fixed in the Act." *Id.* (citing *Calderon v. Geico Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015)). Further, "because the Act is 'remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals.'" *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (citing *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 296 (1985)).

   Defendants contend that paragraph ten of the Complaint, which Defendants say alleges that they violated the FLSA by paying employees overtime compensation based on a varying rate and creating an "artificial 'regular' rate, does not state a claim for relief." (Defs.' Mem. Supp. Mot. Dismiss at 3.) Defendants assert that their pay scheme is not violative of the FLSA because there is no basis in law to argue that a variable rate of pay is a violation of the Act itself. (*Id.*) Defendants argue that Congress purposefully did not restrict the ways in which an employer and employee may set the regular rate. (*Id.* at 4.) Accordingly, the argument continues, case law and federal regulations related to the overtime provision recognize a wide variety of pay scales and schemes as being compliant with the FLSA, including variable and blended pay rates. (*Id.*) Furthermore, the Supreme Court has held that "employers and employees are 'free to establish [the] regular [non-overtime] rate at any point and in any manner they see fit,' '[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected.'" (*Id.* (quoting *Walling v. Younger-*

*Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424 (1945).) Defendant avers that there is simply no provision of the FLSA that establishes the manner in which an employer sets the "regular rate" of pay so long as it is not less than the minimum wage. (*Id.* at 6.) Defendants argue that there is no allegation within paragraph ten of the Complaint that Defendants did not pay one and a half times the "regular rate" for hours worked over forty. (*Id.*) Defendants cite several cases to support their contention that there is no violation of the FLSA based solely on the manner in which the employer sets the regular rate of employee's pay. (*Id.* at 4-6.)

Defendants also argue that paragraph nine of the Complaint does not state a claim for relief. They contend that paragraph nine's claim that, for an ostensibly different group of non-variable rate individuals, Defendants "failed to compensate certain non-exempt employees who worked over forty (40) hours in a workweek one and one-half times their regular rate," presents a legal conclusion couched as a factual statement, which is insufficient to meet federal pleading standards. (*Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).) Defendants allege that there is no description of this different group of individuals and no reasonable basis pled to substantiate the allegations in paragraph nine. (*Id.*) Namely, Plaintiff did not identify any individual employee or specify the type of position in which the employee worked, such that the Court could conclude these employees are "non-exempt." (*Id.*)

In response, Plaintiff argues that Defendants' pay scheme, as alleged in the Complaint, sets forth a claim for a violation of the FLSA. (Pl.'s Opp. at 7, ECF No. 7.) The Complaint alleges that Defendants paid their employees at one "regular rate" of pay during normal, non-overtime workweeks, and at another, lower rate of pay during the weeks that the employees worked overtime. (*Id.*) Plaintiff alleges that "Defendants would reduce the pay rate of an employee who regularly earned $9 to $7.92 an hour when the employee worked between 55-67 hours a week (i.e.,

6

instead of paying the employee $13.50 an hour for overtime, Defendants would pay $11.21 an hour for overtime)." (*Id.* (Compl. ¶ 10).)  Plaintiff asserts that while parties are generally free to agree to a regular rate at any time in a manner they see fit, employers must pay overtime based on that regular rate of pay. (*Id.*)  However, in the Complaint, Plaintiff alleges that Defendants did not pay overtime at the same regular hourly rate of pay that employees received during normal, non-overtime workweeks. (*Id.*)  Plaintiff points out that 29 C.F.R. § 778.327 provides an example of a pay scheme identical to Defendants' scheme that is contrary to the FLSA and reflects an attempt to avoid the overtime requirements of the FLSA:

> If he [employer] set the rate at $6 per hour for all workweeks in which the employee worked 40 hours or less, approximately $5.93 per hour for workweeks of 41 hours, approximately $5.86 for workweeks of 42 hours, approximately $5.45 for workweeks of 50 hours, and so on, the employee would always receive (for straight time and overtime at these "rates") $6 an hour regardless of the number of overtime hours worked. This is an obvious bookkeeping device designed to avoid the payment of overtime compensation and is not in accord with the law. *See Walling v. Green Head Bit & Supply Co.*, 138 F.2d 453 [10th Cir. 1943]. The regular rate of pay of this employee for overtime purposes is, obviously, the rate he earns in the normal nonovertime week—in this case, $6 per hour.

(*Id.* at 7-8 (quoting 29 C.F.R. § 778.327).)  Plaintiff argues that overtime rates as required by the FLSA cannot be avoided by manipulating the pay for regular hours or otherwise reducing the pay for regular hours to make up for the overtime rate that will have to be paid. (*Id.* at 8 (citing *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251 (N.D. Ill. 1994)).)  Contrary to Defendants' arguments, the employer's obligations to pay the overtime premium rate pursuant to Section 7 of the FLSA is not relinquished if the hourly rate for the first forty hours is at or above minimum wage. (*Id.*)  Plaintiff additionally argues that the cases Defendants cite in support of their arguments are inapposite and inapplicable to the allegations of Defendants' pay scheme. (*Id.* at 9.)  Plaintiff argues that while the FLSA does not require employers to compensate employees on an

7

hourly basis, employers are still required to calculate overtime compensation on the basis of the hourly rate derived from the alternative pay schemes. (*Id.*)

Plaintiff has adequately pled that Defendants' pay scheme is a violation of the overtime requirements of the FLSA. "The Supreme Court in *Twombly* articulated a 'two-pronged approach' to assessing the sufficiency of a complaint." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). First, "a complaint must contain factual allegations in addition to legal conclusions." *Id.* Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Here, Plaintiff has satisfied both elements. The FLSA requires employers to compensate nonexempt employees for hours over forty in a given workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). The Complaint clearly alleges that Defendants willfully violated this requirement by failing to compensate their employees for hours worked over forty in a workweek at rates not less than one and one-half times their regular rates. (Compl. ¶ 8.) The Complaint then alleges the way in which Defendants violate the overtime requirement. Specifically, Defendants pay their employees at one "regular rate" of pay during normal, non-overtime workweeks, and at another, lower rate of pay in weeks where employees worked in excess of forty hours. (Compl. ¶¶ 8-10.) Consequently, Defendants' practice creates an artificial "regular rate" in violation of the FSLA. (*Id.* ¶ 10.) The FLSA shields employees from precisely the type of payment scheme alleged in the Complaint—one that pays employees one rate for workweeks of forty hours or less, and a lower rate when employees work over forty hours. *See* 29 C.F.R. § 778.327(b) ("It seems clear that where different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—the longer he works the lower the rate—

the device is evasive and the rate actually paid in the shorter or nonovertime week is his regular rate for overtime purposes in all weeks."). Defendants' alleged scheme undercuts "one of the fundamental purposes of the FLSA: ensuring that employees are adequately paid for all overtime hours." *Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d at 287. The same can be said for Plaintiff's allegation that Defendants paid certain non-exempt employees straight time for hours worked over forty in some workweeks. (*See* Compl. ¶ 9.) Accordingly, Plaintiff has alleged sufficient facts to set forth a plausible FLSA overtime claim against Defendants.

Furthermore, as accurately indicated by Plaintiff, Defendants' cases are inapposite.[3] A clear example of the differences between the cases cited by Defendants and the allegations in Plaintiff's Complaint is *Flood v. New Hanover Cty.*, the only Fourth Circuit case cited by Defendants in support of permissible variable pay rates. (*Id.* (citing 125 F.3d 249 (4th Cir. 1997)).) In *Flood*, the Court held that the employees, whose hours varied from workweek to workweek, worked "fluctuating" hours as required for the employer to pay them pursuant to fluctuating workweek method permitted under the FLSA. Defendants argue that, in *Flood*, the calculation of the overtime compensation based on the fluctuating number of hours necessarily made the "regular rate" variable and decreased the hourly rate the more hours the employee worked. (Defs.' Mem. Supp. Mot. Dismiss at 5.) However, the Court in *Flood* clearly explained that the "fluctuating workweek" payment method was provided by Department of Labor's regulations as an "alternative way for employers to calculate the regular rate of pay for certain *salaried* employees." *Flood*, 125 F.3d at 251 (emphasis added). Further, a vital element of the "fluctuating workweek" payment

---

[3] Defendants are correct that the Supreme Court has held that "[a]s long as the minimum hourly rates established by Section 6 are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit." *Youngerman-Reynolds*, 325 U.S. at 424. However, the Supreme Court in *Youngerman-Reynolds* also cautioned that "this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes." *Id.*

method was that employees would receive a fixed weekly salary regardless of the hours that the employees worked in any particular week. *Id.* at 252.

Here, there is no allegation that Defendants' employees are salaried, nor does Defendants' pay scheme include fixed weekly compensation distributed to employees regardless of the hours worked in any particular week. Similar issues and factual dissimilarities can be found in the rest of the cases cited by Defendants. *See Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065, 1068 (9th Cir. 2000) (finding that the employer did not violate the FLSA by paying meter-readers "flat sums for completing meter reading routes of assigned lengths, even if it took less than the estimated time to complete the routes."); *Adams v. Dep't of Juv. Just. of City of New York*, 143 F.3d 61, 67 (2d Cir. 1998) (finding that parties could "agree to pre-FLSA salary arrangement for houseparents, who regularly worked more than forty hours per week, if annual salary was properly intended by parties to account for both a regular rate and an overtime rate"). Defendants' reliance on *Parth v. Pomona Valley Hospital Medical Center* is also flawed. The Ninth Circuit in *Parth* explained that Department of Labor regulations "set out numerous examples by which employers may not avoid overtime," including that an employer "may not decrease the hourly rate in response to the number of hours worked by an employee during the week." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 803 (9th Cir. 2010). Essentially, the court in *Parth* explains that the FLSA prohibits pay schemes identical to the one alleged in the Complaint. Thus, the Court concludes that the Complaint states a plausible claim for unpaid overtime in violation of the FLSA.

### B. The FLSA is Not Unconstitutionally Vague with Regard to Defining "Regular Rate"

Defendants argue that the FLSA is unconstitutionally vague because it fails to define what is meant by "regular rate." (Defs.' Mem. Supp. Mot. Dismiss at 6-7.) Defendants aver that the term "regular rate" is not sufficiently defined to give Defendants fair notice that their pay practices

are or could be in violation of the FLSA. (*Id.* at 7.) Defendants argue that the Supreme Court has recognized that "regular rate" is not expressly defined in the statute and as a result, the Court has held that the term "means the hourly rate actually paid for the normal, non-overtime workweek." (*Id.* (citing *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203-04 (1947)).) Defendants also point out that the Supreme Court has held that "employers and employees are 'free to establish [the] regular [non-overtime] rate at any point and in any manner they see fit,' '[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected.'" (*Id.* (citing *Younger-Reynolds*, 325 U.S. at 424).) Defendants further argue that the Supreme Court has expressly recognized that that there are an "almost infinite variety of employment situations" that will still be valid under the Act. (*Id.* (citing *Asselta*, 331 U.S. at 203-04).) Thus, Defendants argue, the "infinite variety of valid employment situations" creates "a standardless sweep" that allows those charged with its enforcement to "pursue their personal predilections." (*Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).)

Plaintiff argues that the term "regular rate" is amply defined in the FLSA and is further explained by Supreme Court precedent. (Pl.'s Opp. at 12.) Plaintiff asserts that the FLSA defines the "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee . . . ." (Pl.'s Opp. at 13 (quoting 29 U.S.C. § 207(e)).) The FLSA provides that an employer must pay its employees—who work more than forty hours a week—overtime compensation "at a rate not less than one and one-half times the *regular rate* at which he is employed." (*Id.* (quoting 29 U.S.C. § 207(a)(1)).) Plaintiff also points to the federal regulations that provide additional explanation of the regular rate and how it is calculated. (*Id.* at 13-14 (citing 29 C.F.R. § 778.108).) Plaintiff argues that despite the statutory language, the federal regulations, and the applicable case law

11

regarding the term "regular rate," Defendants assert ignorance and make the disingenuous argument that they had no notice that their pay scheme was a violation of the FLSA. (*Id.* at 14-15.)

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (gathering cases). In light of this fundamental principle, the Due Process Clause of the Fifth Amendment requires "clarity in regulation" and the "invalidation of laws that are impermissibly vague." *Id.* A "punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Withal, it is well established that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982) ("Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process."). The Supreme Court "has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99. "Moreover, where the statute does not regulate protected conduct, it may not be set aside as unconstitutionally vague unless it is 'demonstrate[d] that the law is impermissibly vague in all of its applications.'" *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 643 (4th Cir. 1983) (quoting *Village of Hoffman Ests.*, 455 U.S. at 497.)

There are several deficiencies in Defendants' void for vagueness argument. First, Defendants' argument that the Supreme Court in *Asselta* recognized that "regular rate" was not expressly defined in the statute fails to note that the FLSA was amended to include an express definition of "regular rate." (Defs.' Mem. Supp. Mot. Dismiss at 7; Defs.' Reply at 6); 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . . ."). Second, Defendants do not argue that the FLSA regulates constitutionally protected conduct; therefore, Defendants must demonstrate that the "the law is impermissibly vague in all of its applications." *Republic Indus., Inc.*, 718 F.2d at 497. Defendants have made no such demonstration. Third, as Defendants themselves noted, the Supreme Court has struck down statutes in which the prohibitions are "wholly subjective judgments without statutory definitions, narrowing context or settled meanings." (Defs.' Mem. Supp. Mot. Dismiss at 8 (citing *Williams*, 553 U.S. at 306).) Yet, each factor mentioned in *Williams* is present in the FLSA. There are ample narrowing contexts and settled meanings of "regular rate" contained in the FLSA and in various decisions—several of which are cited by Defendants in their opening brief. Further, the Code of Federal Regulations contains regulations promulgated for the purpose of providing interpretations of the FLSA, including the calculation of "regular rates." 29 C.F.R. §§ 778.1-.603. Such regulations are intended "to be used by employers, employees, and courts to understand employers' obligations and employees' rights under the [FLSA]." *Id.* Defendants' ignorance or purposeful avoidance of such resources does not render the definition of "regular rates" unconstitutionally vague. *Republic Indus., Inc.*, 718 F.2d at 643 (finding that the Multiemployer Pension Plan Amendments Act of 1980 was not unconstitutionally vague as to the terms "substantial" and "employers primarily engaged" because "[b]y and large their meaning may be discerned in most

13

cases in which they are in issue both from the language employed and the legislative history . . . ."). Defendants also argue that the case law and corresponding federal regulations with regard to "regular rate" and the calculation of overtime compensation are confusing at best and contradictory at worst. (Defs.' Reply at 8.) However, as the Fourth Circuit has explained, "[t]here will be gray areas in the interpretation of many statutes, and sometimes there will be inconsistency in the outcomes of marginal cases, but this is part and parcel of the process of statutory construction that is integral to our common law legal system." *Martin v. Lloyd*, 700 F.3d 132, 137 (4th Cir. 2012). Therefore, the Court concludes that the definition of "regular rates" in the FLSA is not unconstitutionally vague, and the Court will deny Defendants' Motion to Dismiss as to this argument.

### C. Plaintiff Has Pled a Timely Claim for FLSA Overtime Violations

Defendants argue that the statute of limitations that applies to violations of the FLSA prohibits Plaintiff from extending the lookback as far back as December 22, 2016. (Defs.' Mem. Supp. Mot. Dismiss at 8.) According to Defendants, the parties entered a tolling agreement, tolling the statute of limitations from December 12, 2019 until March 20, 2020. (*Id.*) As a result of the tolling agreement, Defendants argue that in no event does the applicable statute of limitations allow Plaintiff to extend the lookback as far back as December 22, 2016. (*Id.* at 9.) Plaintiff argues that the Complaint alleges facts sufficient to meet the threshold pleading requirements and contains factual allegations that are clearly not time-barred. (Pl.'s Opp. at 15.) Plaintiff argues that Defendants must invoke the statute of limitations as an affirmative defense because it is not an element of Plaintiff's claim. (*Id.*)

"A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R.*

*Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). A motion to dismiss only addresses the merits of affirmative defenses when the deficiencies giving rise to the affirmative defense appear on the face of the complaint. *Id.*; *CSX Transp., Inc. v. Gilkison*, 406 Fed. App'x 723, 728 (4th Cir. 2010) ("We have noted that asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for defendants."). Courts should only dismiss complaints as time-barred when it is clear "even under the most charitable interpretations of the dates asserted." *See Prescott v. PHH Mortg. Corp.*, No. 3:16cv288, 2017 WL 510449, at *3 (E.D. Va. Feb. 6, 2017). Under the FLSA, a cause of action must be "commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Here, the factual allegations in Plaintiff's Complaint are not clearly time-barred. Additionally, the facts necessary to establish the affirmative defense do not appear on the face of the Complaint. Consequently, Defendants' statute of limitations argument cannot be properly addressed in Defendant's Motion to Dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (An affirmative defense may only be reached "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'"). Therefore, Defendants' Motion to Dismiss based on the statute of limitations must be denied.

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss (ECF No. 3) was denied by Order issued on March 31, 2022 (ECF No. 17).

/s/ 
Roderick C. Young 
United States District Judge

Norfolk, Virginia 
Date: April 5, 2022

15